IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PRUDENTIAL INVESTMENT MANAGEMENT SERVICES, LLC., et al., | ) ) ) | |
| Petitioners, | ) ) | Case No. 22 C 4497 |
| v. | ) ) ) | Judge John Robert Blakey |
| MARLYN SCHIPPER, et al., | ) ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION AND ORDER**

Prudential Investment Management Services, LLC ("PIMS") and Principal Securities, Inc. ("Principal") initiated this action with a petition filed pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, seeking confirmation of the arbitration award entered in their favor and against Marlyn E. Schipper. *See* [1], [10]. Mr. Schipper responded and filed a cross-petition under § 10 of the FAA, seeking to vacate the award, [12]. For the reasons explained more fully below, the Court grants Petitioners' petition, denies Mr. Schipper's petition, and confirms the award.

**I.     Background & Procedural History**

In the underlying dispute, Marlyn Schipper sued his son, Chad, and Principal (based upon respondeat superior) in Illinois state court, alleging fraudulent concealment and conversion, and seeking punitive damages, in connection with Chad's alleged conversion of funds from Schipper's 401(k). *See* [18] at 24–33. The state court judge granted Principal's motion to compel arbitration, *see* [18] at 75–76, and the parties then proceeded to arbitration before the Financial Industry

Regulatory Authority ("FINRA").

In the arbitration, Mr. Schipper claimed breach of fiduciary duty, fraud, breach of contract, restitution, negligence/negligent misrepresentation, and negligent supervision. *Id.* at 78–90. Consistent with FINRA policies, the parties ranked their arbitrator preferences from the list of 35 potential arbitrators provided, and, on July 16, 2019, FINRA advised the parties that they would proceed before a three-judge panel comprised of Edward Louis Koven (Chair), Jacqueline Stanley Lustig, and Marilee Roberg. *See id.* at 229. At some point before June 30, 2021, FINRA replaced arbitrator Roberg with arbitrator Michael Nathanson. *Id.* at 231–32, 234. On June 30, 2021, FINRA advised the parties that Chairman Koven had withdrawn from the panel and that FINRA had replaced Koven with arbitrator Thomas Valenti. *Id.* at 231. Neither party objected to these replacements.

The matter proceeded to hearing on May 17, 2022, with additional hearing sessions scheduled for May 18, 19, 20, and 23. At the outset, Chair Valenti introduced himself and the other panel members and asked whether any of the parties or counsel had "any reason to believe -- or any conflicts with any members of the tribunal that you would like to question at this moment?" *Id.* at 315. Mr. Schipper's counsel responded, "Nothing on behalf of claimant, sir. Thank you." *Id.* Counsel then confirmed their acceptance of "the panel for the hearing as presently constituted." *Id.* at 216.

At the hearing, Mr. Schipper requested the following relief against PIMS: $455,477.88 in compensatory damages, attorneys' fees, interest at the legal rate of

2

5%, punitive damages, $7,378.55 in costs, and forum fees; he requested the following relief against Prudential: $133,075.34 in compensatory damages, attorneys' fees, interest at the legal rate of 5%, punitive damages, $7,378.55 in costs, and forum fees. [18] at 304.  On May 26, 2022, the three-arbitrator panel issued its award, unanimously denying Mr. Schipper's claims in their entirety.  [18] at 303–07.

Less than three months later, on August 24, 2022, PIMS filed a petition to confirm and enforce the arbitration award pursuant to § 9 of the FAA [1], and PIMS and Principal (together, "Petitioners") filed an amended petition on September 16, 2022, [10].  Mr. Schipper filed a response and cross-petition on September 22, 2022, [12], seeking to vacate the arbitral award under § 10 of the FAA.  Petitioners filed a combined reply/response on October 28, 2022, [18], and Mr. Schipper filed a reply in support of his cross-petition on December 16, 2022, [21].  The cross motions are thus now subject to resolution here.[1]

---

[1] The FAA authorizes the parties to petition this Court to confirm or vacate the subject arbitration award, but it does not itself confer subject matter jurisdiction; the Court must have "an 'independent jurisdictional basis' to resolve the matter." *Badgerow v. Walters*, 142 S. Ct. 1310, 1314 (2022) (quoting *Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)).  Although the parties' petitions fall short of demonstrating diversity jurisdiction, Petitioners' supplemental brief [32], filed at the Court's request on November 8, 2023, does so: it shows that PIMS is a Delaware limited liability company with its headquarters in New Jersey; that PIMS' sole member, PIFM Holdco, LLC, is a Delaware limited liability company with its headquarters in New Jersey; that PIFM Holdco, LLC's sole member, PGIM Holding Company, LLC, is a Delaware limited liability company with its headquarters in New Jersey; that PGIM Holding Company, LLC's sole member, Prudential Financial, Inc., is a New Jersey corporation with its principal place of business in New Jersey; that Principal is an Iowa corporation with its principal place of business in Iowa; and that Schipper remains domiciled in Illinois.  The Court thus has an independent jurisdictional basis to resolve the parties' petitions. *See, e.g., City of E. St. Louis, Illinois v. Netflix, Inc.*, 83 F.4th 1066, 1070 (7th Cir. 2023) ("the citizenship of an LLC is the citizenship of each member—traced through as many levels as necessary until reaching a natural person or a corporation.").

3

**II.     Applicable Legal Standards**

Federal court review of arbitration awards remains "tightly limited." *Standard Sec. Life Ins. Co. of New York v. FCE Benefit Administrators, Inc.*, 967 F.3d 667, 671 (7th Cir. 2020) (citing *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994)).  Generally, "if a party seeks to confirm an arbitration award within a year of its entry, the court must do so unless the award has been vacated or modified under sections 10 or 11 of the FAA." *Chelmowski v. AT&T Mobility LLC*, No. 14 C 7283, 2015 WL 231811, at *3 (N.D. Ill. Jan. 15, 2015) (citing 9 U.S.C. §9; *IDS Life Ins. Co. v. Royal Alliance Assocs.*, 266 F.3d 645, 650-51 (7th Cir. 2001)). "Confirmation is 'usually routine or summary,' and a court will set aside an arbitration award 'only in very unusual circumstances.'" *Standard Sec. Life Ins. Co. of New York*, 967 F.3d at 671 (quoting *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 691−92 (7th Cir. 2004); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).

The FAA authorizes this Court to vacate an arbitral award: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter

submitted was not made." 9 U.S.C. § 10(a).

A party petitioning a federal court to vacate an arbitration award "bears the heavy burden of showing that the award falls within" these "very narrow" circumstances. *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 434 F. Supp. 2d 554, 559 (N.D. Ill. 2006) (citing *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)); *see also Affymax, Inc. v. Ortho-McNeil-Janssen Pharms., Inc.,* 660 F.3d 281, 284 (7th Cir. 2011) (The list of grounds for vacation "is exclusive; neither judges nor contracting parties can expand it."). Beyond these exceptions, the award "will be enforced" and this "is true even if the arbitrator's award contains a serious error of law or fact." *Butler Mfg. Co. v. United Steelworkers of Am., AFL-CIO-CLC*, 336 F.3d 629, 632 (7th Cir. 2003) (citing *Major League Baseball Players Assoc. v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam ); *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir.1993)). *See also Plank v. Vision Ltd. P'ship*, No. 02 C 4453, 2003 WL 76864, at *2 (N.D. Ill. Jan. 9, 2003) ("The grounds for challenging an arbitration award are narrowly limited, and factual or legal errors—even clear or gross errors—are not grounds for vacating an award."). Otherwise, "arbitration would just be the first of a series of steps that always culminated in court litigation, and it would lose its raison d'être." *Id.* (citing *Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 100 (7th Cir. 1996)). Once a dispute "has been resolved through arbitration, the role of the reviewing court is extremely limited." *Wise v. Wachovia Sec. LLC*, No. 04 C 7438, 2005 WL 1563113, at *2 (N.D. Ill. May 4, 2005), *aff'd*, 450 F.3d 265 (7th Cir. 2006). This Court "must extend extraordinary deference

5

to the arbitration panel's decision." *Id.*

To set aside an arbitration award for alleged partiality, the "interest or bias of an arbitrator must be direct, definite, and capable of demonstration rather than remote, uncertain, or speculative." *Crosby v. Sears Holding Corp.*, No. 15 C 6396, 2018 WL 1394037, at *3 (N.D. Ill. Mar. 20, 2018) (citing *Tamari v. Bache Halsey Stuart Inc.*, 619 F.2d 1196, 1200 (7th Cir. 1980), *cert. denied*, 449 U.S. 873 (1980)). The party seeking to vacate the award on the basis of partiality, "must show that partiality is more than just possible or plausible by pointing to sufficient concrete evidence that would enable a reasonable person to conclude that there is a legitimate question as to the partiality of the arbitrator." *Id.* (citing *Admin. Dist. Council 1 of Ill. of Int'l Union of Bricklayers & Allied Craftworkers, AFL-CIO v. Masonry Co., Inc.*, 941 F. Supp. 2d 912, 917 (N.D. Ill. 2012); *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 148 (1968) (finding an arbitrator was partial based upon an undisclosed ongoing business relationship with a party)).

### III. Discussion & Analysis

Here, PIMS filed its petition on August 24, 2022, less than three months after the arbitration panel issued its award on May 26, 2022. And it is undisputed that the arbitration award has not been otherwise vacated or modified. Thus, under § 9 of the FAA, this Court must affirm the award absent proof from Mr. Schipper that vacation is warranted based upon one of the articulated grounds.

In his petition, Mr. Schipper invokes § 10(a)(2) and (3), arguing that arbitrator Thomas Valenti manifested evident partiality and engaged in misbehavior when he

failed to disclose his involvement in a case with a factual predicate virtually identical to this case. *See* [13]. Mr. Schipper argues that Valenti "egregiously violated the parties' contracted-for forum rules regarding arbitrator disclosure, made numerous stunning misrepresentations to the parties, and otherwise failed to disclose properly two pending litigations – one in Cook County, Illinois, and one in FINRA arbitration – in which Chairman Valenti is a named defendant accused of serious misconduct." [12] at 2. Schipper argues that Chairman Valenti "was personally *defending against* these serious allegations of fraud and breach of fiduciary duty relating to a family member's investment account at the same time he served as an arbitrator in Mr. Schipper's case which entailed Mr. Schipper's *prosecution* of these same causes of action involving extremely similar allegations." *Id.* at 3. As a result, he argues, the "impression of possible bias" against Schipper's position remains "stark and unmistakable." *Id.*

First, *possible* bias remains insufficient to justify vacating an arbitration award. To win on his motion to vacate, Mr. Schipper must demonstrate that Valenti was *evidently partial* towards Petitioners, and he fails to do so. "Evident partiality" requires demonstration of "more than a mere appearance of bias." *Health Services Management Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir.1992). The bias "must be direct, definite and capable of demonstration rather than remote, uncertain or speculative." *Tamari v. Bache Halsey Stuart Inc.*, 619 F.2d 1196, 1200 (7th Cir.1980), *cert. denied*, 449 U.S. 873 (1980). "Evident partiality" must be assessed based upon a reasonable person standard, *e.g., First Options of Chicago, Inc. v. Kalin*, No. 94 C

7

7243, 1995 WL 340945, at *1 (N.D. Ill. June 2, 1995), and a reasonable person, after viewing the evidence as a whole could not conclude an evident bias on the part of either the arbitration panel or Chair Valenti.

Indeed, Mr. Schipper offers no proof of evident partiality. He did not even provide a transcript from the arbitration hearing to allow the Court to gauge Valenti's conduct during the proceedings. And, as a result, the Court finds that Mr. Schipper has failed to carry his burden. *See, e.g., Allied Beacon Partners, Inc. v. Bosco*, No. 13 C 5165, 2014 WL 551712, at *3 (N.D. Ill. Feb. 12, 2014) (denying motion to vacate because party failed to provide transcripts of the arbitration proceeding, and thus failed to support its claim of misconduct and impartiality). Nor does the record support his conclusory assertion that the case before Valenti was identical to the cases in which Valenti was a named party. Chad Schipper was not named in the arbitration proceeding and the claims in that proceeding were not directed at Schipper's family member. The record provides no factual basis to infer that Valenti should have seen himself in Chad Schipper or that he saw Susan Valenti in Mr. Schipper. Based upon the current record, the cases are separate, unrelated, and inapposite factually and legally.

Essentially, Mr. Schipper argues that an arbitrator sued by his family member is presumably biased against any litigant who has, even in a separate proceeding, sued a family member for wrongdoing. But that argument sweeps too broadly and remains unsupported. If business and professional relationships between litigants and arbitrators do not automatically evidence partiality, the Court has no basis to

8

find that unrelated claims involving familial relations would do so. *See, e.g., Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir. 1992) (Noting that "the mere fact that there was some prior business relationship between Hughes and arbitrators Walton and Tobermann is not in and of itself sufficient to disqualify them as arbitrators." Rather, "the relationship between the arbitrator and the party's principal must be 'so intimate—personally, socially, professionally, or financially—as to cast serious doubt' on the arbitrator's impartiality.") (quoting *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 680 (7th Cir. 1983)). The disconnect in the factual record and claims in this case, and the cases involving Chairman Valenti's family, do not support even an inference of partiality.

Moreover, Valenti disclosed the cases Schipper claims evidence bias. Schipper did not object to Valenti's service, and, in fact, he ranked Valenti so high in the selection process, from a list of 35 potential arbitrators, that Valenti was the highest ranked candidate remaining on the parties' combined chair-qualified list, which is how he became the replacement chair when Chairman Koven withdrew. In the course of the arbitration, Valenti filed multiple disclosure reports, and each included the pending litigation Schipper now claims constituted evidence of clear bias against him. *See, e.g.,* [18-10] at 8 (Valenti's 7/7/21 disclosure, provided ten months before the arbitration hearing, showing that he was a managing member of Valenti Oil Investments, LLC and that he was involved in several cases relating to that entity, including that he was a co-Plaintiff in a 2002 case involving breach of fiduciary duty, a Defendant in a pending, 2019 estate case, and a Plaintiff in a pending 2020

9

libel/slander suit); [18-11] at 8 (Valenti's updated 7/13/21 disclosures reflecting the same matters); [18-12] at 8 (Valenti's 11/11/21 updated disclosure reflecting the same matters); [18-13] at 8 (Valenti's 3/9/22 updated disclosure, provided just two months before the arbitration hearing, reflecting the same matters). Mr. Schipper received each of these disclosures and never objected. Finally, the parties confirmed the arbitration panel at the beginning of the hearing on May 17, 2022. And, after conducting a hearing over five days, the panel, comprised of three arbitrators including Valenti and two others whose neutrality Schipper does not question, unanimously rejected his claims.[2]

In *Midwest Generation EME, LLC v. Continuum Chem. Corp.,* 768 F. Supp. 2d 939 (N.D. Ill. 2010), the losing party in arbitration moved to vacate the award, arguing that one of the arbitrators had a professional relationship with the lawyers on the other side and failed to disclose it; the court declined to vacate the award and declined to even allow discovery to explore the alleged conflict. In so doing, the court noted that the movant had shown nothing more than "a series of public, almost exclusively parallel, professional contacts involving lecturing and writing on construction related matters. These endeavors were 'no secret,' and their existence, as Continuum's Motion concedes, was readily discoverable to anyone who chose to look." *Id.* at 946–47. So too here. Even if the arguably analogous facts could suggest

---

[2] The unanimous nature of the award further undermines Mr. Schipper's bias claim. *See Tamari*, 619 F.2d 1196, 1201 (7th Cir. 1980) (Noting that, with a unanimous decision, "simple mathematics indicates that the particular composition of the panel should not have mattered."); *Fort Hill Builders, Inc. v. Nat'l Grange Mut. Ins. Co.*, 866 F.2d 11, 14 (1st Cir. 1989) (affirming decision to affirm arbitration award despite claim of evident partiality because "the panel decision was unanimous for plaintiff, and defendants alleged no wrongdoing on the part of the other two members").

10

possible bias (and they do not), Valenti disclosed the matters Schipper flags. And his disclosure undermines Mr. Schipper's claim of partiality or misbehavior. Mr. Schipper had every opportunity to raise any concerns when FINRA notified him of Valenti's inclusion on the panel or when Valenti convened the hearing and specifically asked the parties if they had any issues with any of the panel members. He did not, and his waiver further supports the Court's decision today. *E.g., Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Loc. 731*, 990 F.2d 957, 960 (7th Cir. 1993) ("Failure to present an issue before an arbitrator waives the issue in an enforcement proceeding"; parties "cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court.").

Mr. Schipper also argues that Chairman Valenti should have answered "yes" when asked if he had been accused of misconduct; his argument equates being sued with being accused of misconduct. But, again, Valenti did disclose the lawsuits; and Schipper could have learned the details of the lawsuits at any time, as he ultimately did. As a result, the Court has no basis to find that the alleged misbehavior prejudiced Mr. Schipper's rights, as required under § 10.

## IV. Conclusion

For the reasons explained above, the Court denies Mr. Schipper's petition to vacate the arbitration award and grants Petitioners' petition to confirm the award. All matters in dispute having been resolved, this case is closed. Civil case terminated.

Dated: March 25, 2024

ENTERED:

John Robert Blakey
United States District Judge